UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VICENTE BAHENA, JONAS BAHENA, JOSE
CRUZ AYALA, and RAFAEL RODRIGUEZ, *on
behalf of themselves and all others similarly situated*,

                         Plaintiffs,                        Civ. Action No.: 1:15-cv-1507(VSB)

       -against-                             **FIRST AMENDED COMPLAINT**

PARK AVENUE SOUTH MANAGEMENT LLC,     **JURY TRIAL DEMANDED**
GILANCO HOLDINGS LLC, 3850 BROADWAY
HOLDING LLC, BARBERRY ROSE
MANAGEMENT COMPANY, INC., 2500 ACP
PARTNERS LLC, 2500 SEVENTH AVENUE
ASSOCIATES LLC, AMSTERDAM REALTY
PARTNERS LLC, 2090 AMSTERDAM
ASSOCIATES LLC, NOAM CORPORATION d/b/a
NOAM MANAGEMENT GROUP, 26 STAR LLC,
EMO REALTY PARTNERS LLC, MAURICE
MCKENZIE, and EDWARD M. OSTAD,

                        Defendants.
-------------------------------------------------------------X

       Plaintiffs Vicente Bahena, Jonas Bahena, Jose Cruz Ayala, and Rafael Rodriguez ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, allege as follows:

### NATURE OF THE ACTION

       1.     Plaintiffs are building superintendents who have worked for Defendants at various times between 2009 and the present. Throughout the course of their employment, Plaintiffs regularly worked as many as seven days and well over 40 hours each week, including the requirement that they be on call 24 hours a day, seven days a week to deal with any issues that

arose in their respective buildings, without receiving minimum wages and/or overtime pay as required by law.

2. This action is brought to recover unpaid minimum and overtime wages owed to Plaintiffs and other similarly situated employees of Defendants, as well as injunctive and declaratory relief against Defendants' unlawful actions, attorneys' fees and costs.

3. Plaintiffs bring this action on behalf of themselves and all similarly situated current and former employees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and specifically the collective action provision of the FLSA, 20 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawful wages.

4. Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") § 195 and 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 146-2.2 and 2.3.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' federal claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. Sec. 1391(b).

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## COLLECTIVE ACTION ALLEGATIONS

8. Plaintiffs bring their FLSA claims on behalf of themselves and all similarly situated persons who work or have worked for Defendants as building superintendents at any point over the 3 years preceding the filing date of this First Amended Complaint, and who did not receive minimum wages and/or overtime pay for all hours worked in excess of forty in the work week ("FLSA Collective Action").

9. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs, and as such, notice should be sent to all others similarly situated. There are numerous similarly situated current and former employees of Defendants who have been similarly underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

## CLASS ACTION ALLEGATIONS

10. Plaintiffs sue on their own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

11. Plaintiffs bring their NYLL claims on behalf of all similarly situated persons who work or have worked for Defendants as building superintendents at any point over the 6 years preceding the filing date of this First Amended Complaint, and who did not receive adequate annual notices or wage statements as required by NYLL § 195 during the course of their employment ("Rule 23 Class Action").

12. The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of

Defendants, upon information and belief there are at least around 50 Class members, and there could be significantly more.

13. There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

    a. Whether Defendants employed and/or jointly employed Plaintiffs under New York law;

    b. Whether Defendants provided to their employees, at the time of each employee's hire and on or before February first of each subsequent year of that employee's employment, notices meeting the requirements outlined in NYLL § 195(1)(a); and

    c. Whether Defendants provided to their employees, with each payment of wages, wage statements meeting the requirements outlined in NYLL § 195(3).

14. The claims of the representative parties are typical of the claims of the Class.

15. The representative parties and their counsel will fairly and adequately protect the interests of the Class.

16. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

17. Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

## PARTIES

18. Plaintiffs Vicente Bahena, Jonas Bahena, Jose Cruz Ayala, and Rafael Rodriguez are adult individuals who, at all times relevant to this Complaint have been residents of the State and City of New York.

19. At all times relevant to this Complaint, Plaintiffs were employees of Defendants within the meaning of the FLSA, 29 USC § 203(e), and NYLL § 190(2).

20. Written consent forms for Plaintiffs are attached to this Collective Action Complaint.

21. Upon information and belief, Plaintiffs were employed in an enterprise that has employees selling, handling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce and has annual gross revenue of more than $500,000.

22. Upon information and belief, Defendants own numerous other residential buildings in the City of New York, in addition to those at which the named Plaintiffs worked.

23. Defendant Maurice McKenzie is an adult individual who, upon information and belief and at all relevant times, was and is involved in the ownership and control of at least Defendants Park Avenue South Management LLC, Gilanco Holdings LLC, 2500 ACP Partners LLC, Amsterdam Realty Partners LLC, and EMO Realty Partners LLC, and was the managing agent of the building in which Plaintiff Rafael Rodriguez worked and the person to whom he was ultimately responsible until at least August 26, 2014, was the managing agent of the buildings in which Plaintiff Jose Cruz works and the person to whom he was ultimately responsible until at least November 5, 2014, is still the managing agent of the buildings in which Plaintiff Vicente Bahena works and the person to whom he is ultimately responsible, and is still the managing

5

agent of the buildings in which Plaintiff Jonas Bahena worked and was the person to whom he was ultimately responsible.

24. Defendant Edward M. Ostad is an adult individual who, upon information and belief and at all relevant times, was and is involved in the ownership and control of at least Defendants Park Avenue South Management LLC, Gilanco Holdings LLC, 2500 ACP Partners LLC, Amsterdam Realty Partners LLC, and EMO Realty Partners LLC, and was involved in the ownership of the building in which Plaintiff Rafael Rodriguez worked until at least August 26, 2014, involved in the ownership of the buildings in which Plaintiffs Jose Cruz and Vicente Bahena work until at least November 5, 2014, and is still involved in the ownership of the buildings in which Plaintiff Jonas Bahena worked.

25. Defendant Park Avenue South Management LLC ("Park Avenue South") is a real estate limited liability company located in New York. It was responsible for the management of the building in which Plaintiff Rafael Rodriguez worked until at least August 26, 2014, the buildings in which Plaintiff Jose Cruz works until at least November 5, 2014, and is still responsible for the management of the buildings in which Plaintiffs Vicente and Jonas Bahena work or worked. Upon information and belief, Defendants McKenzie and Ostad own and control Defendant Park Avenue South.

26. Defendant Gilanco Holdings LLC ("Gilanco Holdings") is a real estate limited liability company located in New York. It owned the building in which Plaintiff Rafael Rodriguez worked until August 26, 2014. Upon information and belief, Defendants McKenzie and Ostad own and control Defendant Gilanco Holdings.

27. Defendant 3850 Broadway Holding LLC is a real estate limited liability company located in New York. It purchased the building in which Plaintiff Rafael Rodriguez worked on August 26, 2014.

28. Defendant Barberry Rose Management Company, Inc., d/b/a Howal Management Company, is a real estate corporation located in New York. It became responsible for the management of the building in which Plaintiff Rafael Rodriguez worked on August 26, 2014.

29. Defendant 2500 ACP Partners LLC ("2500 ACP Partners") is a real estate limited liability company located in New York. It owned the buildings in which Plaintiff Vicente Bahena worked until November 5, 2014. Upon information and belief, Defendants McKenzie and Ostad own and control Defendant 2500 ACP Partners.

30. Defendant 2500 Seventh Avenue Associates LLC is a real estate limited liability company located in New York. It purchased the buildings in which Plaintiff Vicente Bahena worked on November 5, 2014.

31. Defendant Amsterdam Realty Partners LLC ("Amsterdam Realty") is a real estate limited liability company located in New York. It owned the buildings in which Plaintiff Jose Cruz works until November 5, 2014. Upon information and belief, Defendants McKenzie and Ostad own and control Defendant Amsterdam Realty.

32. Defendant 2090 Amsterdam Associates LLC is a real estate limited liability company located in New York. It purchased the buildings in which Plaintiff Jose Cruz works on November 5, 2014.

33. Defendant Noam Corporation, d/b/a Noam Management Group, is a real estate corporation located in New York. It became responsible for the management of the buildings in which Plaintiff Jose Cruz works on November 5, 2014.

34. Defendant 26 Star LLC is a limited liability company located in New York. Upon information and belief, it is associated with Defendant Noam Management Group. It was responsible for the payment of at least Plaintiff Vicente Bahena's wages after the buildings he works in were sold on November 5, 2014.

35. Defendant E.M.O. Realty Partners LLC ("E.M.O.") is a real estate limited liability company located in New York. It has owned the buildings in which Plaintiff Jonas Bahena worked since 2007. Upon information and belief, Defendants McKenzie and Ostad own and control Defendant E.M.O., which is named for Defendant Ostad's initials.

36. On information and belief, Defendants McKenzie and Ostad are associates and partners in a number of real estate ventures.

37. Defendant Ostad was the authorized signatory for both Defendant 2500 ACP Partners and Defendant Amsterdam Realty when these entities sold the buildings in which Plaintiffs Vicente Bahena and Jose Cruz work or worked on November 5, 2014.

38. Upon information and belief, the authorized signatory for Defendant Gilanco Holdings when it sold the building in which Plaintiff Rafael Rodriguez worked on August 26, 2014, Nader Ohebshalom, is Defendant Ostad's father-in-law.

39. On the New York State Department of State website, Defendant Amsterdam Realty indicates that it should be served process care of Defendant Ostad at his address in Jackson Heights, New York.

40. On the New York State Department of State website, Defendants 2500 Seventh Avenue Associates and 2090 Amsterdam Associates both indicate that they should be served process care of Acuity Capital Partners LLC in New York, New York.

41. On the New York State Department of State website, Defendants Noam Corporation and 26 Star LLC indicate they should be served process at the same address in Brooklyn, New York.

42. Upon information and belief, Defendants operate as an enterprise, owning and managing numerous residential apartment buildings throughout the City of New York, willfully failing to pay the Superintendents they employ minimum and/or overtime wages as required by law, and deliberately engaging in the creation of new corporate entities, pretextual real estate transactions, and other methods of intentional dissembling in order to conceal the associations between Defendants and avoid their widespread FLSA violations from being identified and collectively redressed.

43. Upon information and belief, at all relevant times, Defendants jointly employed Plaintiffs and had the power to hire and fire them, supervised and controlled their work schedules and the conditions of their employment, determined the rate and method of their payment, and maintained their employment records.

44. Upon information and belief, Plaintiffs worked in premises and used equipment owned by different Defendants than those by whom they were formally controlled.

45. Upon information and belief, Plaintiffs' formally-recognized employers could and occasionally did shift from one Defendant to another.

46. Upon information and belief, Plaintiffs performed a discrete job that is integral to all Defendants' businesses.

47. Upon information and belief, Defendants share common labor policies and practices.

48. Upon information and belief, at all times relevant to this Complaint, Defendants were employers of Plaintiffs within the meaning of the FLSA, 29 USC § 203(d), and NYLL § 190(3).

## CLASSWIDE FACTUAL ALLEGATIONS

49. Plaintiffs bring FLSA and NYLL claims on behalf of themselves and all similarly situated persons employed by Defendants.

50. All Plaintiffs were, at various times between 2009 and the present, employed as building superintendents in buildings owned and/or operated by Defendants in New York.

51. As building superintendents, the job duties of the Plaintiffs and those similarly situated ("Class Members") included, *inter alia*, collecting and taking out garbage on a daily basis, making minor apartment repairs including minor plumbing, flooring, roofing, and electrical work, maintaining building boilers, checking hallways for cleanliness and maintenance issues, and cleaning inside and outside the buildings.

52. All of the work that Plaintiffs and Class Members performed was assigned by Defendants and/or Defendants were aware of all the work performed by Plaintiffs and Class Members, as well as hours that Plaintiffs and Class Members worked.

53. Plaintiffs were on call 24 hours a day, 7 days a week. Even when Plaintiffs were not actively working, they were nonetheless expected to be available to answer tenant calls and deal with any emergencies that arose. If at any point during the day or night they needed to leave building premises, they were required to call their Field Managers to notify them that they were leaving and to inform them of who would be covering the building during their absence.

54. When Plaintiffs and Class Members accepted employment with Defendants, they were hired to work at fixed biweekly wage rates.

10

55. At all relevant times, Defendants had the right to control, and did in fact control, the hours, hourly pay, assignments and schedules of the named Plaintiffs and all superintendents working at the buildings they own and/or manage.

56. On information and belief, Defendants failed to pay Class Members overtime wages at a rate of one and one half times their regular rate of pay for hours worked in excess of 40 per work week.

57. As described above, Defendants failed to pay the named Plaintiffs minimum wages as required by law and/or overtime wages at a rate of one and one half times their regular rate of pay for hours worked in excess of 40 per work week.

58. At all relevant times, Defendants failed to keep complete and/or accurate records of the hours worked by and wages paid to the named Plaintiffs.

59. As part of their regular business practices, Defendants intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and NYLL. This pattern or practice includes, but is not limited to :

   a. Failing to record hours or to establish, maintain and preserve for not less than six years contemporaneous, true, and accurate payroll records;

   b. Willfully failing to pay Plaintiffs and Class Members required minimum wages and/or one and one half times their regular rate of pay for hours worked in excess of forty per work week;

   c. Failing to provide Plaintiffs and Class Members with yearly employment notices as required by NYLL § 195(1)(a); and

   d. Failing to provide Plaintiffs and Class Members with wage statements upon each payment of wages as required by NYLL § 195(3).

60.     At all relevant times, Defendants failed to post and/or keep posted a notice explaining employees' rights under the FLSA, in violation of 29 C.F.R. § 516.4.

61.     Upon information and belief, Defendants' unlawful conduct as described herein is pursuant to a policy or practice of attempting to minimize labor costs by violating the FLSA and NYLL.

62.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

## INDIVIDUAL FACTUAL ALLEGATIONS

### Vicente Bahena ("V. Bahena")

63.     Plaintiff V. Bahena worked for Defendants from approximately April 2011 to the present.

64.     At all relevant times, V. Bahena was and is employed as a building superintendent at 2500 and 2504 7th Avenue.

65.     V. Bahena lives in the basement of one of the buildings. He lives in the basement for the sole purpose of being available to provide services on a 24 hour basis and would not live there but for the fact that he must be on site at all times to meet the requirements of his job. Indeed, he has suffered health problems as a result of his residence in the basement but fears being unable to do his job if he moves out.

66.     During his employment with Defendants, V. Bahena has worked in excess of 40 hours per week, working on average seven days and approximately 70 hours a week. Defendants have failed to pay V. Bahena sufficiently for all hours worked as required by law.

67.     In addition to his hours actively working, V. Bahena was required to be on call to deal with any situation or need that arose in the buildings 24 hours a day, 7 days a week. When

he needed someone to cover for him, he had to pay them out of his own pocket, which his supervisors knew.

68. Despite complaining to supervisors, V. Bahena has never been given time off. Even when he asked for vacation time for a possible hospital stay, he was refused.

69. At all relevant times, Defendants paid V. Bahena approximately $700 every other week.

### Jose Cruz Ayala ("Cruz")

70. Plaintiff Cruz worked for Defendants from approximately October 2, 2009 to the present.

71. At all relevant times, Plaintiff Cruz was and is employed as a building superintendent at 2090 and 2092 Amsterdam Avenue.

72. For the first two years of his employment with Defendants, Cruz worked 96 to 101 hours a week. During the remainder of his employment with Defendant, Cruz worked approximately 84 hours a week. Defendants have failed to pay Cruz sufficiently for all hours worked as required by law.

73. In addition to his hours actively working, Cruz was required to be on call to deal with any situation or need that arose in the buildings 24 hours a day, 7 days a week. In fact, Cruz once signed a document stating that if he was found to be missing from the premises on more than 3 occasions, he would be immediately terminated.

74. Until November 5, 2014, Defendants paid Cruz a biweekly salary of $450. After that date, Defendants paid him a biweekly salary of $700.

### Rafael Rodriguez (Rodriguez)

75. Plaintiff Rodriguez worked for Defendants from approximately September 2009 until his termination on October 7, 2014.

76. At all relevant times, Plaintiff Rodriguez was employed as a building superintendent at 3850 Broadway or 580 West 161st Street.

77. At all relevant times, Rodriguez lived in the basement of the building for the sole purpose of being available to provide services on a 24 hour basis. He would not have lived there but for the fact that he had to be on site at all times to meet the requirements of his job.

78. For most of his employment by Defendants, Rodriguez worked approximately 70 hours a week. Defendants have failed to pay Rodriguez sufficiently for all hours worked as required by law.

79. In addition to his hours actively working, Rodriguez was required to be on call to deal with any situation or need that arose in the building 24 hours a day, 7 days a week. When he needed someone to cover for him, he had to pay them out of his own pocket, which his supervisors knew.

80. At all relevant times, Defendants paid Rodriguez approximately $700 every other week.

### Jonas Bahena ("J. Bahena")

81. Plaintiff J. Bahena worked for Defendants from approximately April 2011 until February 2, 2014.

82. At all relevant times, J. Bahena worked as a building superintendent at 2359 and 2361 8th Avenue.

14

83. For most of his employment by Defendants, J. Bahena worked approximately 60 hours a week. Defendants have failed to pay J. Bahena sufficiently for all hours worked as required by law.

84. In addition to his hours actively working, J. Bahena was required to be on call to deal with any situation or need that arose in the building 24 hours a day, 7 days a week. He complained to his supervisor about not being paid appropriately, but was ignored.

85. At all relevant times, Defendants paid J. Bahena $500 every other week.

### FIRST CAUSE OF ACTION: FLSA MINIMUM WAGE

86. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

87. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

88. Plaintiffs consent to be a party to this action, pursuant to 29 U.S.C. § 216(b).

89. At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e).

90. At all times relevant to this action, Plaintiffs and Class Members were engaged in commerce and the corporate Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

91. Defendants violated the rights of Plaintiffs and Class Members by failing to pay them the minimum wage for each hour worked in each discrete work week, in violation of the FLSA, 29 U.S.C. § 206(a)(1).

92. Defendants' failure to pay Plaintiffs and Class Members the minimum wage was willful within the meaning of the FLSA, 29 U.S.C. § 255.

93. Defendants are liable to Plaintiffs and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION: FLSA OVERTIME

94. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

95. Defendants violated the rights of Plaintiffs and Class Members by failing to pay overtime compensation at a rate not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 per week, in violation of the FLSA, 29 U.S.C. § 207(a)(1).

96. Defendants' failure to pay Plaintiffs and Class Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.

97. Defendants are liable to Plaintiffs and Class Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION: NYLL ANNUAL NOTICE

98. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

99. Pursuant to NYLL § 195(1)(a), every employer is required to

provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of

16

business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

100. Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with any kind of annual notice whatsoever, let alone an annual notice meeting the requirements laid out in ¶ 99.

101. NYLL § 198(1)(b) provides that any employee not provided such notice may collect damages of $50 for each work day that the violation occurred or continued to occur, up to a total of $5,000 per employee (together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief).

102. During the course of Plaintiffs and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate annual notices as required by New York law.

103. Defendants are therefore liable to Plaintiffs and Class Members in the amount of $5,000 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## FOURTH CAUSE OF ACTION: NYLL WAGE STATEMENTS

104. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

105. Pursuant to NYLL § 195(3), every employer is required to

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

17

106. Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with wage statements meeting the requirements laid out in ¶ 105.

107. NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250 for each work day that the violation occurred or continued to occur, up to a total of $5,000 per employee (together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief).

108. During the course of Plaintiffs and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law.

109. Defendants are therefore liable to Plaintiffs and Class Members in the amount of $5,000 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

a. That, at the earliest possible time, Plaintiffs be permitted to give notice of this collective action, or that the Court issue such notice to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b.  Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

c.  Designation of the named Plaintiffs as class representatives and counsel of record as class counsel;

d.  Unpaid wages, attorneys' fees, costs, and interest pursuant to 29 U.S.C. § 201 *et seq.*;

e.  An additional and equal amount in unpaid wages as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.*;

f.  Statutory damages pursuant to NYLL § 198(1)(b) and (d); and

g.  Issuance of a declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL and a permanent injunction against Defendants' continued engagement in such practices.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
May 19, 2015

Respectfully submitted,

By: _____
Grace Cretcher
Abigail Cook-Mack
BERANBAUM MENKEN LLP
80 Pine Street, 33rd Floor
New York, NY 10005
Ph: (212) 509-1616
Fax: (212) 509-8088