**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
VICENTE BAHENA, JONAS BAHENA, JOSE
CRUZ AYALA, and RAFAEL RODRIGUEZ, *on*
*behalf of themselves and all others similarly situated,*

                                               Case No.: 1:15-cv-1507

                 Plaintiffs,

        -against-

PARK AVENUE SOUTH MANAGEMENT LLC
*et al.*,
                 Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CONSENT MOTION
TO APPROVE SETTLEMENT AGREEMENT, CERTIFY SETTLEMENT CLASS,
<u>AUTHORIZE CLASS NOTICE, AND SCHEDULE FAIRNESS HEARING</u>**

Bruce E. Menken
Grace Cathryn Cretcher
Scott Simpson
BERANBAUM MENKEN LLP
80 Pine Street, 33rd Floor
New York, New York 10005
Ph: (212) 509-1616
Fax: (212) 509-8088

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................................ii

I.     PRELIMINARY STATEMENT ..................................................................................................1

II.    FACTUAL BACKGROUND ......................................................................................................2

III.   SETTLEMENT NEGOTIATIONS .............................................................................................2

IV.   PROPOSED SETTLEMENT TERMS ........................................................................................3

    A.   Net Settlement Fund and Allocation Formula ....................................................................4

    B.   Service Awards ...................................................................................................................6

    C.   Attorneys' Fees and Litigation Costs.................................................................................9

    D.   Releases.............................................................................................................................9

    E.   Settlement Claims Administrator ......................................................................................9

V.    CLASS ACTION SETTLEMENT PROCEDURE...................................................................10

VI.   LEGAL STANDARDS.............................................................................................................10

    A.   Rule 23 ............................................................................................................................10

    B.   FLSA ...............................................................................................................................12

VII.  ARGUMENT ..........................................................................................................................13

    A.   Certification of a Settlement Class Under Rule 23 is Appropriate ..................................13

    B.   Preliminary Approval of the Settlement is Appropriate ..................................................16

    1.   The Settlement is Fair, Reasonable, and Adequate ........................................................19

        a.   Further Litigation Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ......................19

        b.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).........................................20

        c.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ........................................................................................20

        d.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 & 5)...............21

        e.   Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ..............................................................................................................22

        f.   Defendants' Ability to Withstand a Greater Judgment is at Issue (*Grinnell* Factor 7) ...........22

        g.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ........................................22

      2.   The Proposed Notices Are Appropriate ........................................................................23

VIII. A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED ..................................................24

IX.   CONCLUSION........................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010)....................................................12

*Amchem Prods.. Inc. v. Windsor*, 512 U.S. 591 (1997) ..............................................................................13

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................................12

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)............................................8

*Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176 (W.D.N.Y. 2007)..................................................................16

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)...........................................................................................15

*Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651, 2012 WL 4760910
    (S.D.N.Y. Oct. 5, 2012) ..........................................................................................................................7

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ....................................................12

*Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) .................................................17

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)..........................................................*passim*

*Clark v. Astrue*, 274 F.R.D. 462 (S.D.N.Y. 2011). ..................................................................................14

*Clark v. Ecolab, Inc.*, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .........................................................7

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)......................................................14, 16

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)........................................................................11, 19

*Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227 (M.D. Fla. 2010)................................................................12

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ....................................................................13

*Duchene v. Michael Cetta, Inc.*, No. 06CIV4576PACGWG, 2009 WL 5841175 (S.D.N.Y. Sept. 10,
    2009) ...................................................................................................................................................8, 16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................................................13

*Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009)....14

*Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 28, 2014) .....................................7

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ...............................................7, 8, 17, 23

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *1 (S.D.N.Y. Mar. 24,
    2008) .........................................................................................................................................................13

*Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 CIV. 1335 RA JCF, 2012 WL 7620734 (S.D.N.Y. Oct.
    23, 2012), *report and recommendation adopted*, No. 10 CIV. 1335 RA JCF, 2013 WL 829098
    (S.D.N.Y. Feb. 27, 2013) ........................................................................................................................14

*Guzman v. VLM, Inc.*, No. 07-CV-1126, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008)...............................16

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011) ..........................................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988)........................................................................17

*Hayes v. Harmony Gold Mining Co., Ltd.*, 509 Fed.Appx. 21 (2d Cir. 2013)..........................................11

*Henry v. Little Mint, Inc.*, No. 12 CIV. 3996 CM, 2014 WL 2199427 (S.D.N.Y. May 23, 2014).......10, 12

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)............................................16

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)..........19, 20, 21, 23

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002)....................................................18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918
    (S.D.N.Y. July 27, 2007) ..........................................................................................................................18

*In re Janney Montgomery Scott LLC Fin. Consultant Litigation*, 2009 WL 2137224 (E.D. Pa. Jul. 16,
    2009) ...........................................................................................................................................................8

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993)...........................................24

*In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132 (2d Cir. 1998) ........................................... 11

*In re Traffic Executive Ass'n,* 627 F.2d 631 (2d Cir. 1980) .......................................................... 17

*In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004) ................................... 17, 20

*Joel A. v. Giuliani,* 218 F.3d 132 (2d Cir. 2000) ................................................................... 11, 23

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982) ................................ 18

*Marcus v. Kan. Dep't of Revenue,* 209 F. Supp. 2d 1179 (D. Kan. 2002) .................................... 18

*Matheson v. T-Bone Rest., LLC,* No. 09 Civ. 4214, 2011 U.S. Dist. LEXIS 143773, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ................................................................................................... 7

*Maywalt v.Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998) ................................ 17

*Medley v. Am. Cancer Soc'y,* No. 10 Civ. 3214, 2010 WL 3000028 (S.D.N.Y. July 23, 2010) ............... 12

*Mentor v. Imperial Parking Sys., Inc.*, No. 05 CIV. 7993 WHP, 2010 WL 5129068 (S.D.N.Y. Dec. 15, 2010) ......................................................................................................................... 8

*Myers v. Hertz Corp.*, 624 F.3d 537,554 (2d Cir. 2010) ............................................................ 24

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972) ........................................................................... 23

*Payment Card Interchange Fee & Merch. Discount Antitrust Litig.,* 986 F.Supp.2d 207 (E.D.N.Y. 2013) ......................................................................................................................... 12

*Petrovic v. Amoco Oil Co.,* 200 F.3d 1140 (8th Cir. 1999) ........................................................ 18

*Reiter v. Sonotone Corp.,* 442 U.S. 330 (1979) .......................................................................... 13

*Silverstein v. AllianceBernstein,* L.P., No. 09-CV-5904 JPO, 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) ........................................................................................................................... 7

*Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ............ 8

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*, 546 F.3d 196 (2d Cir. 2008) ..13

*United States Parole Comm'n v. Geraghty,* 445 U.S. 388 (1980) ............................................... 13

*Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ........................ 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*, 396 F.3d 96 (2d Cir. 2005) ................................. 11, 17

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ................................................................................................................ 7

*Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) .............................. 8

*Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332 (S.D.N.Y. 2012) .............................................. 12

*Wright v. Stern,* 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .............................................................. 18

**Statutes**

Fair Labor Standards Act ....................................................................................................... *passim*

New York Labor Law ............................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................... *passim*

Fed. R. Civ. P. 54 ............................................................................................................................ 9

**Regulations**

NYCRR § 141-1.2 ............................................................................................................................ 5

**Secondary Sources**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002) ....................... 8, 10, 17, 19

*Manual for Complex Litigation, Fourth* (2011) ......................................................................... 25

*Manual for Complex Litigation, Third* (1995) ........................................................................... 11

# I.    PRELIMINARY STATEMENT

Plaintiffs Vicente Bahena, Jonas Bahena, Jose Cruz Ayala, and Rafael Rodriguez, all individually and on behalf of all other similarly situated individuals, by and through their undersigned attorneys and with the consent, for settlement purposes only, of Defendants Park Avenue South Management, LLC, Maurice McKenzie ("Park Ave. South Defendants"), Gilanco Holdings, LLC ("Gilanco Defendants"), 2500 ACP Partners, LLC, EMO Realty Partners, LLC, Amsterdam Realty Partners, LLC, and Edward Ostad ("Ostad Defendants") (collectively, "Defendants"), submit this Memorandum of Law in Support of their Consent Motion to Approve Settlement Agreement, Certify Settlement Class, Authorize Class Notice, and Schedule Fairness Hearing. The Settlement Agreement executed by the parties is attached to the Declaration of Bruce E. Menken ("Menken Decl.") as Exhibit A. As set forth in detail below, Plaintiffs respectfully request that the Court review and approve the terms of the proposed settlement of this action both as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and also as a class action under Fed. R. Civ. P. 23 for Plaintiffs' claims under the New York Labor Law ("NYLL"), §§ 190 *et seq.* Plaintiffs also ask the Court to approve the proposed apportionment of the settlement proceeds, after conducting a hearing about the fairness, reasonableness, and adequacy of the proposed settlement. Attached hereto as Exhibit B, Plaintiffs submit a proposed notice of the settlement to be mailed or delivered to each opt-in Plaintiff under the FLSA collective action and to each potential class member under the Rule 23 class, informing them of the terms of the Settlement Agreement, advising them of their rights under the proposed settlement, and giving them an opportunity to be heard about the final approval of the settlement.

## II.     FACTUAL BACKGROUND

This is a lawsuit under the Fair Labor Standards Act and the New York Labor Law to recover unpaid minimum and overtime wages and recover damages for violation of the notice and recordkeeping provisions of NYLL § 195. Plaintiffs filed the Complaint on March 3, 2015, as a collective action under Section 16(b) of the FLSA and also as a traditional class action under Rule 23, Fed. R. Civ. P., for alleged violations of the NYLL. The case was conditionally certified under the FLSA on September 16, 2016. (Doc. 120). Notice was sent to potential collective members, and 24 individuals – in addition to the named Plaintiffs – filed forms to opt-in to the FLSA case.

Plaintiffs and members of the Plaintiff class are building superintendents who worked in buildings managed by Park Avenue South for various periods between 2009 and the present. Plaintiffs allege they were responsible for, *inter alia*, keeping the buildings and the sidewalks around them clean, making repairs, taking out the garbage, and responding to tenant issues and complaints. Plaintiffs also allege they all regularly worked well in excess of 40 hours per week, and that based on the high number of hours they were working, that they were paid less than the full minimum wage rate and/or did not receive time and a half pay for their overtime hours. Finally, Plaintiffs allege that they never received legally sufficient notice or wage statements as required under NYLL § 195. Defendants assert that they did not violate the law and in fact complied with all applicable laws. Therefore, Defendants believe that they would have prevailed at trial. The Ostad and Gilanco Defendants also deny that they were Plaintiffs' employer within the meaning of the FLSA and NYLL.

## III.     SETTLEMENT NEGOTIATIONS

The proposed Settlement Agreement in this case is the product of extensive, arms-length

settlement negotiations, which culminated in a mediation session on May 15, 2017 before attorney Martin F. Scheinman. Mr. Scheinman, who has served as a full-time Arbitrator and Mediator since 1979, is widely viewed as one of the busiest and most acceptable neutrals in the New York metropolitan area and has decided or helped resolve over 20,000 disputes.

Prior to the mediation session, the parties exchanged and responded to each other's written interrogatories and requests for production and conducted extensive interviews of the named Plaintiffs. At the time of the mediation, significant discovery had been conducted, including the production of hundreds of pages of documents by Defendants, and the disputed legal and factual issues had been sharply defined. Plaintiffs were represented at the mediation by the undersigned counsel, and all named Plaintiffs and all defense counsel attended the mediation session.

The parties agreed to a term sheet at the conclusion of the mediation and a settlement amount of $650,000.00. Following the mediation, the parties spent many hours ironing out the details of this hybrid NYLL-FLSA settlement, including but not limited to multiple telephone conferences between the attorneys, the exchange and refinement of a number of different damages allocation formulas, and the repeated exchange and revision of drafts of the proposed settlement agreement, notices to class members, and this memorandum. The rigorous and time-consuming settlement negotiations were conducted in good faith and resulted in the proposed settlement terms set forth herein.

## IV.    PROPOSED SETTLEMENT TERMS

The proposed Settlement Agreement provides that Defendants will make a gross payment of $650,000.00 in complete settlement of this action, including attorney's fees and costs (the "Settlement Fund"). The proposed settlement amount is a fair, adequate, and reasonable

resolution of this claim, given the anticipated costs and delays of continued litigation. It is well within the range of potential outcomes for the Plaintiff class, given the unresolved legal and factual issues in the case.

### A.  Net Settlement Fund and Allocation Formula

The parties have agreed that Plaintiffs may petition the Court for an award from the Settlement Fund for attorneys' fees and costs, as well as for $10,000 service awards for each of the named Plaintiffs. After these amounts, plus settlement administration costs, have been deducted, the remaining funds (the "Net Settlement Fund") will be allocated among the Class Members. Class Members who do not opt out of the settlement will be paid pursuant to an allocation formula based on the number of weeks they worked for Defendants between March 3, 2009 and the date of any Order granting the instant motion (the "Class Period"), as set forth in the proposed Settlement Agreement (Exhibit C). A Class Member's award will be determined by multiplying the Net Settlement Fund by the fraction derived for that individual from the above-mentioned formula. The parties conservatively estimate that the net settlement fund will be approximately $375,000.00.

*Allocation Formula.*  The proposed allocation formula is a product of a detailed, arms-length negotiation between the parties that took place over the course of more than a month. The settlement agreement covers three sets of claims: FLSA claims, NYLL § 195 claims, and NYLL wage claims. The FLSA claims are by far the most valuable and strongest claims in this case. To the extent that they apply to individual Class Members, the NYLL § 195 claims are statutorily capped at either $2,500.00 or $5,000.00 per year per eligible Class Member. The NYLL minimum wage and overtime claims ("wage claims") are worth very little. Plaintiffs in fact did not assert any NYLL wage claims in their Second Amended Complaint due to NYCRR § 141-

4

1.2, which requires lawful wages for "janitors" (like the superintendents in this case) to be calculated based on a weekly per-unit rate. Plaintiffs concluded that their wage claims under the NYLL would be weak, possibly not viable, and would only yield *de minimis* damages, if any. However, Defendants understandably want 100% certainty that no former employee will bring a wage and hour lawsuit pursuant to the NYLL. Therefore, notwithstanding the parties' belief that the chances of an individual successfully bringing a wage claim under the NYLL against Defendants are remote, the parties have agreed to incorporate all NYLL wage claims into the settlement and award compensation to those class members that reflects the weakness of those claims. The parties further agree to a minimum payment of $100.00 per class member. With these important factors in mind, the parties agreed to the following allocation formula:

| TIME PERIOD WORKED | Points Per Week |
|---|---|
| March 3, 2009 – March 31, 2011 | **.25** |
| April 1, 2011 – November 30, 2012 | **.75** |
| December 1, 2012 – May 9, 2013 | **.75** (*only applies to those who did <u>not</u> already opt in)[1] |
| December 1, 2012 – March 1, 2016 | **32** (*only applies to those who already opted in) |
| May 10, 2013 – March 1, 2016 | **8** (*only applies to those who did <u>not</u> already opt in) |
| March 1, 2016 – [Preliminary Approval Date] | **.25**[2] |

---

[1] The parties entered into a court-ordered tolling agreement tolling the statute of limitations for the FLSA claims beginning December 1, 2015. *See* ECF No. 87. The agreement terminated at the end of the Court-authorized FLSA opt-in notice period, which was February 20, 2017. *See* ECF No. 143. Therefore, the clock on the non-opt-ins' FLSA statute of limitations has been running since February 20, 2017. Accordingly, the parties estimate, under the assumption that the motion would be resolved no later than July 31, 2017, that the FLSA statute of limitations for the non-opt-in class members would begin on or about May 10, 2013 for those FLSA claims. The parties agree that those class members who already opted into the litigation can recover FLSA damages beginning December 1, 2012.

[2] The parties agreed to devalue damages from March 1, 2016 until the Preliminary Approval date in light of the fact that Defendants contend they revised their wage and hour practices to strengthen their continued compliance with the FLSA. The parties agree that this does not constitute an admission of liability on Defendants' part and is for purposes of achieving a fair and equitable settlement.

Per the parties' agreement, all payments to Class Members will be apportioned as 50% to back pay, subject to payroll withholdings and retirement contributions (reported as W-2 income) and 50% to liquidated damages (reported as 1099 income). This allocation is appropriate to maximize the amount of each class member's cash payout and lessen the burden of withholdings for Social Security and Medicare for both Class Members and Defendants. The service or incentive payments to the named Plaintiffs would not be subject to withholding as back pay, but instead treated as non-wage compensation (also reported as 1099 income). The proposed apportionment of the settlement provides for attorney's fees of thirty-three and one-third percent – or one-third – of the gross amount of the common settlement fund, or a total of $216,666.67 for attorney's fees, plus reimbursement of actual costs in connection with the case.

Class Members will have 90 days from the date of mailing to endorse and cash their Settlement Checks. After 90 days, any checks that have not been cashed shall be void and the monies returned to the Net Settlement Fund. The Settlement Claims Administrator will then make a second distribution of the remaining funds, on a pro-rata basis, only to Class Members who cashed their checks within the 90-day period. Prior to the second distribution, the Settlement Claims Administrator may use any remaining monies in the Net Settlement Fund to pay any unforeseen liabilities, claims, expenses, and costs, provided the Settlement Claims Administrator first consults with and obtains approval from counsel for all parties. After 90 days after the second distribution, any uncashed Settlement Checks to Rule 23 Class Members shall be remitted to City Harvest as a *cy pres* charitable donation.

### B. Service Awards

The proposed apportionment of the settlement also provides for the payment of additional amounts to the named Plaintiffs in the total amount of $40,000.00, or $10,000.00 each. It is very

common in class and collective cases for service or incentive payments to be made to named

Plaintiffs or class representatives in addition to their proportionate share of the recovery. Such

payments compensate Plaintiffs for the additional efforts, risks, and hardships they have

undertaken as class representatives on behalf of the group in filing and prosecuting the action.

Service or incentive payments are especially appropriate in employment litigation, where "the

plaintiff is often a former or current employee of the defendant, and thus, by lending his name to

the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse

actions by the employer or co-workers." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187

(W.D.N.Y. 2005). Courts in this District and around the country have approved substantial

incentive payments in FLSA collective actions and other employment-related class actions. *See,*

*e.g., Clark v. Ecolab, Inc*., 2010 WL 1948198 (S.D.N.Y. May 11, 2010) (approving $10,000

service awards to 7 named plaintiffs in hybrid class/collective action involving unpaid overtime);

*Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *27 (S.D.N.Y. Jan. 28, 2014)

(approving service awards of $25,000 each for five named plaintiffs in wage and hour case);

*Silverstein v. AllianceBernstein*, L.P., No. 09-CV-5904 JPO, 2013 WL 7122612, at *10

(S.D.N.Y. Dec. 20, 2013) (granting service award of $25,000 to class representative in wage and

hour class action settlement); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist.

LEXIS 144651, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (granting service award of

$20,000 to class representative in wage and hour class action settlement); *Matheson v. T-Bone*

*Rest., LLC*, No. 09 Civ. 4214, 2011 U.S. Dist. LEXIS 143773, 2011 WL 6268216, at *9

(S.D.N.Y. Dec. 13, 2011) (approving service award of $45,000 in wage and hour class action

settlement and discussing cases); *Willix v. Healthfirst, Inc*., No. 07 Civ. 1143, 2011 U.S. Dist.

LEXIS 21102, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ($30,000 service award);

*Mentor v. Imperial Parking Sys., Inc.*, No. 05 CIV. 7993 WHP, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 and $15,000 service awards in FLSA and NYLL wage and hour action); *Duchene v. Michael Cetta, Inc.*, No. 06CIV4576PACGWG, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving service payments of $25,000 and $10,000 in wage and hour action); *see also In re Janney Montgomery Scott LLC Fin. Consultant Litigation*, 2009 WL 2137224, at *12 (E.D. Pa. Jul. 16, 2009) (approving incentive payments of $20,000 each to three named Plaintiffs); *Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) (awarding incentive payments of $20,000 and $10,000 each to named Plaintiffs); *Frank*, 228 F.R.D. at 187 (approving incentive award to class representative of $10,523.37, which represented 8.4% of the total settlement fund); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, *22-23 (D.N.J. Apr. 8, 2011) (approving incentive payments of $10,000 to eight named plaintiffs; citing 2006 study referenced in 4 Newberg on Class Actions § 11.38, at 11-80, that showed average incentive award to class representatives to be $16,000); *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) (approving incentive payments of $10,000 per named plaintiff and $1,000 for each deponent in FLSA case on behalf of over 11,000 cooks and cashiers employed by convenience store chain).

The named Plaintiffs have devoted substantial amounts of time to this case, including taking time off from their respective jobs to meet at their counsel's office on four to six occasions, submitting affidavits in support of Plaintiffs' Motion for Conditional Certification, spending substantial time assisting counsel with and responding to discovery requests, and attending the entire May 15, 2017 mediation session. They also helped counsel respond to Defendants' document requests and exposed themselves to hostility in their industry (which could have potentially included losing their apartment) due to their origination of this case. Most critically,

the named Plaintiffs were actively involved and hugely helpful to counsel in the prosecution of this matter.

### C. Attorneys' Fees and Litigation Costs

Consistent with the Settlement Agreement, Plaintiffs' counsel will apply for reimbursement from the Settlement Fund for their actual litigation costs and for no more than one-third (33.33%) of the Settlement Amount to compensate them for attorneys' fees. The Court need not rule on fees and costs now, however. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' counsel will file a motion for approval of attorneys' fees and reimbursement of expenses with its motion for final approval of the settlement.

### D. Releases

The Settlement Agreement provides that all Rule 23 Class Members release all wage and hour and retaliation claims arising under New York law and/or pursuant to their employment with Defendants. It further provides that all FLSA Collective Members release all wage and hour and retaliation claims arising under the FLSA and/or pursuant to their employment with Defendants. Additionally, all Class Members with claims that fall within the FLSA statute of limitations will release their FLSA claims by virtue of receiving a settlement check. Participating Class and Collective Members release all claims that were or could have been asserted against Defendants and their predecessors, successors, and assigns.

### E. Settlement Claims Administrator

Under the Settlement Agreement, Class Counsel will retain the services of a Settlement Claims Administrator jointly selected by counsel for all parties. The Settlement Claims Administrator will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, translating the notices from English to Spanish,

9

distributing Service Awards, distributing any attorneys' fees and costs award by the Court to

Class Counsel, calculating the Settlement Checks in accordance with the Court's Final Approval

Order, the claims administration process, distribution of the Settlement Checks to Class

Members, providing the original Settlement Checks signed by the Class Members to Defendants'

Counsel, and providing copies of the endorsed Settlement Checks to counsel for all parties upon

request. The Administrator will also receive opt-outs and objections, and will timely forward the

same to the parties upon receipt by the Administrator. The Settlement Administrator's fees shall

be paid out of the Net Settlement Fund.

## V.  CLASS ACTION SETTLEMENT PROCEDURE

The procedure for approval of a class action settlement with FLSA claims includes three

distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written
   motion for preliminary approval, including preliminary approval of any agreed settlement
   classes;

2. Dissemination of mailed and/or published notice of settlement to all affected Class Members;
   and

3. A final settlement approval hearing at which Class Members may be heard regarding the
   settlement, and at which argument concerning the fairness, adequacy, and reasonableness of
   the settlement may be presented.

*Henry v. Little Mint, Inc.*, No. 12 CIV. 3996 CM, 2014 WL 2199427, at *5 (S.D.N.Y. May 23,

2014) (*citing* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class*

*Actions* §§ 11.22 *et seq.* (4th ed. 2002)).

## VI.  LEGAL STANDARDS

### A.  Rule 23

Rule 23(e) provides that "a class action shall not be dismissed without approval of the

court." Fed. R. Civ. P. 23(e). There is a "strong judicial policy in favor of settlements,

particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132,

138 (2d Cir. 1998). A court may approve a class action settlement if it is "fair, adequate, and

reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel after meaningful

discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (*citing*

*Manual for Complex Litigation, Third,* § 30.42 (1995)). In evaluating the merits of a proposed

class action settlement, the court must ensure that the settlement is both procedurally and

substantively fair. *Hayes v. Harmony Gold Mining Co., Ltd*., 509 Fed.Appx. 21, 22 (2d Cir.

2013). A court determines a settlement's fairness by looking at both the settlement's terms

(substantive fairness) and the negotiating process leading to settlement (procedural

fairness). *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

      In determining whether a settlement agreement is substantively fair, courts in the Second

Circuit consider the factors enumerated in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d

Cir. 1974). The *Grinnell* factors include: (1) the complexity, expense, and likely duration of the

litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

      In determining whether a settlement is procedurally fair, courts scrutinize the negotiation

process "in light of the experience of counsel, the vigor with which the case was prosecuted and

the coercion or collusion that may have marred the negotiations themselves." *Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 986 F.Supp.2d 207, 221 (E.D.N.Y. 2013).

### B. FLSA

In deciding whether to approve an FLSA collective action settlement, courts consider, among other things: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted) (*citing Medley v. Am. Cancer Soc'y*, No. 10 Civ. 3214, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010); *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241 (M.D. Fla. 2010); *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 54 (E.D.N.Y. 2010)). These factors should be considered in light of the totality of the circumstances. *Wolinsky*, 900 F.Supp.2d at 335.

Courts are mindful of the fact that "FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438, at *8 (S.D.N.Y. May 1, 2014). Therefore, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). Nevertheless, judicial approval of FLSA settlements is required. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Because the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, however, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Henry*, 2014 WL 2199427 at *7 (internal citation

and quotation marks omitted).

## VII.    ARGUMENT

### A.  Certification of a Settlement Class Under Rule 23 is Appropriate

Rule 23 of the Federal Rules of Civil Procedure governs traditional class actions, or what are referred to as "opt-out" class actions. The United States Supreme Court has noted that the drafters of Rule 23 intended class actions to be available to address situations where a group of people seek to vindicate the rights of injured persons who otherwise would be without sufficient strength or inclination to bring the alleged wrong-doer into court on an individual basis. *Amchem Prods. Inc. v. Windsor*, 512 U.S. 591 (1997). Before granting final approval of a class action settlement, courts must consider whether the proposed settlement class satisfies the requirements enumerated in Fed. R. Civ. P. 23. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *1 (S.D.N.Y. Mar. 24, 2008) ("Before reaching the merits of the proposed settlement, the Court must ensure that the settlement class is certifiable."); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

Courts have broad discretion in deciding whether or not to certify a class action under Rule 23. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979). In evaluating the appropriateness of a case for class certification, the Court should not consider the factual merits of the case or the strengths or weaknesses of the underlying claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 158 (1974). Once a court is satisfied that the requirements of Rule 23 are met, class certification is a matter of right. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 403 (1980). To obtain class certification under Rule 23, Plaintiffs must prove the four threshold requirements of Rule 23(a): numerosity, commonality, typicality and adequacy. *Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). Plaintiffs can

establish all of the prerequisites for class certification under Rule 23, for their claims under the NYLL.

Numerosity is presumed where a court can reasonably infer that the class contains 40 members or more. *Clark v. Astrue*, 274 F.R.D. 462, 471 (S.D.N.Y. 2011). As Defendants provided Plaintiffs with a list of 74 superintendents they employed between March 3, 2009 and the present, the numerosity requirement is satisfied. The commonality and typicality factors require Plaintiffs to show, respectively, "questions of law or fact common to the class," and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2) and (3). Plaintiffs typically must produce "some quantum of evidence… tending to show the existence of a class of persons affected by a company-wide policy or practice." *Guan Ming Lin v. Benihana N.Y. Corp*., No. 10 CIV. 1335 RA JCF, 2012 WL 7620734, at *5 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted*, No. 10 CIV. 1335 RA JCF, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) (*quoting Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383, at *6 (S.D.N.Y. Nov. 13, 2009)). All of the four named Plaintiffs allege they never received an annual notice as required under NYLL § 195(1)(a). Further, all of the named Plaintiffs allege they received pay stubs that failed to state the rate or basis of pay in violation of NYLL § 195(3). Moreover, Plaintiffs have set forth specific facts alleging minimum wage and overtime violations that give rise to wage claims under the NYLL. Given the straightforward nature of Plaintiffs' NYLL claims, they can safely establish commonality and typicality. Finally, to satisfy the adequacy requirement, Plaintiffs must show that their interests are not antagonistic to those of the class, and the same strategies that will vindicate Plaintiffs' claims also apply to the class. *Damassia v. Duane Reade, Inc*., 250 F.R.D. 152, 158 (S.D.N.Y. 2008). Plaintiffs have no antagonistic interests to prospective Class

Members.

Once this threshold showing is made, the claims must fit into one or more of the categories of permissible class actions described in Rule 23(b). Under Rule 23(b)(3), Plaintiffs must show that "the question of law or fact common to Class Members predominate over any questions affecting only individual members," and that "a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Here, the questions of law and fact are common among Class Members, and a class action is the most efficient way to resolve such a straightforward set of legal and factual issues. Additionally, it would be a cumbersome and burdensome waste of judicial resources to bring 74 or so individual cases on the state law claims. Rule 23(b)(3) identifies four matters that the Court should consider in making its requisite findings of "predominance" and "superiority": (A) the Class Members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

This case clearly involves common issues of law and fact between Plaintiffs and all members of the putative class. The proposed class action would be far superior to requiring each potential class member to file an individual lawsuit. Plaintiffs are not aware of any interest each individual member of the putative class would have in individually controlling his or her own action. Plaintiffs are not aware of any other litigation concerning this matter against Defendants. Next, this Court appears to be a perfectly acceptable forum for litigating this matter. All potential Class Members live and work (or previously lived and worked) in New York City. Finally,

Plaintiffs are not aware of any difficulties in managing the proposed case as a class action. District courts in the Second Circuit routinely allow and certify hybrid wage and hour suits with opt-in FLSA collective actions alongside opt-out Rule 23 class actions. *See e.g., Duchene*, 244 F.R.D. at 204 ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together."); *see also Damassia*, 250 F.R.D. at 164 (permitting hybrid action based on the overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions); *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2008 WL 597186, at *10 (E.D.N.Y. Mar. 2, 2008) ("[I]t is routine for courts in the Second Circuit to certify state labor law classes in FLSA actions."); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 374-75 (S.D.N.Y. 2007) (rejecting defendant's contention that supplemental jurisdiction should not be exercised over NYLL claims in a simultaneous FLSA collective action and Rule 23 NYLL suit); *Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176, 179 (W.D.N.Y. 2007) ("Rule 23 and FLSA actions are routinely prosecuted together…"); *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 401-02 (N.D.N.Y. 2011) (collecting cases).

Plaintiffs respectfully request that the Court order that proposed Rule 23 Settlement Class Notice be sent to all potential members of the Rule 23 class action by first-class mail or hand delivery, and that these potential parties be provided 30 days from the date of the mailing of the Notice to file a Consent to Join Lawsuit form in order to become a party hereto, to file an Opt-out Form to exclude themselves from participating in the settlement, or to file a comment or objection to the settlement.

### B.  Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits. *Wal-Mart Stores*, 396

F.3d at 116 (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* Newberg § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v.Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998); *see also Churchill Village, LLC v. Gen. Elec. Co*., 361 F.3d 566, 575 (9th Cir. 2004). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1988).

Preliminary approval, which Plaintiffs seek here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. Newberg § 11.25. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank*, 228 F.R.D. at 184. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright v. Stern*, 553 F. Supp. 2d 337,

17

343 (S.D.N.Y. 2008) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (same); *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

If the settlement was achieved through arm's-length negotiations between experienced counsel, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007); *see also In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotations omitted). Preliminary approval is the first step in the settlement process. It simply allows notice to issue to the class and for class members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input. The parties' instant application should be granted because proposed class counsel engaged in substantial litigation which led to an arms-length negotiation culminating in a fair and robust mediated settlement.

18

### 1.  The Settlement is Fair, Reasonable, and Adequate

As noted, in evaluating a class action settlement, courts in the Second Circuit generally consider the nine *Grinnell* factors. 495 F.2d at 463. Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," Newberg § 11.25, to determine whether the settlement falls within the range of possible final approval or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. Here, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### a.  Further Litigation Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement before further dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Although the parties have already undertaken considerable time and expense in litigating this matter, further litigation without settlement would necessarily result in additional expense and delay. Defendants would seek to depose the named Plaintiffs, a former supervisor named Genaro Silberio, and likely additional opt-in Plaintiffs. Plaintiffs would seek to depose the named Defendants as well as other PAS supervisors and employees. Expert testimony would likely be required to determine damages. A complicated trial would be necessary, featuring lengthy testimony by Defendants, Plaintiffs, Class Members, and potentially experts. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume

tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. A trial of the damages issues, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### b.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Notice of the settlement has not yet been issued to the class, such that an assessment of the Class's reaction is premature. That said, the Named Plaintiffs, who are Class Representatives, support the settlement. Although the Court should more fully analyze this factor after notice issues and class members are given the opportunity to opt-out or object, it currently weighs in favor of preliminary approval.

### c.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require many more hours of discovery work for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted). The parties' discovery here meets this standard. Class Counsel interviewed all named Plaintiffs extensively and repeatedly and all opt-in Plaintiffs to gather information relevant to the claims in the litigation, and obtained, reviewed, and analyzed substantial document production from Defendants to assess and calculate damages. As such, this

factor also weighs in favor of preliminary approval.

### d. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 & 5)

Although Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and NYLL. While Plaintiffs believe that they could ultimately establish Defendants' liability and their own damages, to do so would require significant factual development without the aid of any written time records kept by Plaintiffs. Additionally, Plaintiffs were compensated for additional work which Defendants maintain would reduce their damages substantially (Plaintiffs argue that they were required to do this work and the extra compensation only increases their regular rate of pay).

Additionally, should the case proceed to trial, Defendants believe that Plaintiffs face substantial risk of being unable to establish that the Ostad and Gilanco Defendants were their employers within the meaning of the FLSA and NYLL. These Defendants allege that they do not own, have never owned, and have no connection to many of the buildings managed by the Park Ave. South Defendants. Moreover, the Ostad and Gilanco Defendants maintain that they did not hire, fire, supervise, or set rates of pay for superintendents and porters in the buildings they did own, and played little to no role in the overall management of the buildings. Had the litigation gone forward, Plaintiffs faced substantial risk of being unable to prove that the Ostad or Gilanco Defendants were their employers for purposes of FLSA and NYLL liability.

While named Plaintiffs believe that their claims are meritorious, their counsel are

experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates this uncertainty, and thus, this factor weighs in favor of preliminary approval.

> **e.   Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)**

The risk of maintaining the class status through trial is also present. Rule 23 Class Certification has not yet been granted, and although the case has been preliminarily certified as a collective action under the FLSA, Defendants would likely move for decertification should the case proceed. Risk, expense, and delay are involved in each of these steps in the litigation. Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

> **f.   Defendants' Ability to Withstand a Greater Judgment is at Issue (*Grinnell* Factor 7)**

Defendants' ability to withstand a greater judgment is a relevant and significant concern. Defendants represent that they do not have funds available to pay any judgment materially greater than the total settlement amount proposed herein. As such, this factor also favors preliminary approval.

> **g.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Plaintiffs' counsel has determined that this case presents significant risks that militate toward substantial compromise. Defendants have agreed to settle this case for a substantial amount, $650,000.00. The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. The determination of whether a settlement amount is reasonable "does not

involve use of a 'mathematical equation yielding a particularized sum'" *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Here, each Class Member will receive payment based upon the number of weeks he or she worked while employed by Defendants during the relevant period. The amount that each class member will receive reflects a careful balancing of the strengths of their underlying claims and the risks that their claims would not ultimately succeed, which explains why the settlement weighs most heavily in favor of compensation for those who opted into the FLSA collective action. Additionally, the allocation formula takes into account the substantial weakness of class members' claims during certain time periods since March 3, 2009.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. Accordingly, all of the *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (*quoting Giuliani*, 218 F.3d at 138-39), the Court should grant its preliminary approval.

### 2.  The Proposed Notices Are Appropriate

The content of both the Proposed Rule 23 Class Action Settlement Notice and the Proposed Rule 23 Class Action and FLSA Collective Action Settlement Notice fully complies with the requirements under Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B),

the notice must provide the best notice practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort. The notice must concisely

and clearly state in plain, easily understood language: the nature of the action; the definition of

the class certified; the class claims, issues, or defenses; that a class member may enter an

appearance through counsel if the member so desires; that the court will exclude from the class

any member who requests exclusion, when and how members may elect to be excluded; and the

binding effect of a class judgment on class members under Rule 23(c)(3).

Both Proposed Settlement Notices here satisfy each of these requirements. The Notices

also describe the terms of the settlement, inform class members in great detail how the allocation

formula works and provide an estimate of each class member's award, inform the class about the

allocation of attorneys' fees, and provide specific information regarding the date, time, and place

of the final approval hearing. The Proposed Rule 23 Class Action and FLSA Collective Action

Settlement Notice also complies with the FLSA's requirements. *See Myers v. Hertz Corp*., 624

F.3d 537, 554 (2d Cir. 2010). Accordingly, the detailed information in both Proposed Settlement

Notices is more than adequate to put class members on notice of the proposed settlement and is

well within the requirements of Rule 23(c)(2)(B). Courts have approved class notices even when

they provided only general information about a settlement. *See, e.g., In re Michael Milken &*

*Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the

terms of the settlement generally"). The Proposed Settlement Notices far exceed this bare

minimum and fully comply with the requirements of Rule 23(c)(2)(B).

## VIII.   A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED

The Court should schedule a final fairness hearing to obtain all required information to

determine that class certification is proper and the settlement should be approved. *See Manual*

*for Complex Litigation, Fourth* § 21.633 (2011). The fairness hearing will provide a forum for proponents and opponents to explain, describe, or challenge the terms and conditions of the class certification and settlement, including the fairness, adequacy, and reasonableness of the settlement. Accordingly, Plaintiffs request that the Court schedule the time, date, and place of the final fairness hearing.

## IX. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court certify the Rule 23 settlement class, grant preliminary approval of the proposed Settlement Agreement, authorize the sending of the proposed notices of settlement to all Class Members, schedule a settlement fairness hearing, and grant final approval of the settlement of this matter, including the proposed apportionment of the settlement proceeds, after providing a reasonable opportunity for any Class Members to comment on or object to the proposed settlement.

BERANBAUM MENKEN LLP

Dated:    New York, New York
        June 30, 2017     By:           */s/*
                                          Bruce E. Menken
                                          Grace Cathryn Cretcher
                                          Scott Simpson
                                          80 Pine Street, 33rd Floor
                                          New York, New York 10005
                                          Ph: (212) 509-1616
                                          Fax: (212) 509-8088